**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIE RODRIGUEZ,

                            Plaintiff,

            v.                                              No. 9:19-CV-1244
                                                            (GTS/CFH)
MONROE, et al.,

                            Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

Willie Rodriguez
Plaintiff pro se
18-A-4626
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

Maynard, O'Connor, Smith &
Catalinotto, LLP                          ADAM T. MANDELL, ESQ.
Route 9W
P.O. Box 180
Saugerties, New York 12477
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Willie Rodriguez ("Rodriguez" or "Plaintiff"), who was, at all relevant

times, confined to Ulster County Jail ("Ulster C.J.") as a convicted and sentenced prisoner,

brings this action pursuant to 42 U.S.C. § 1983 against Defendants Correctional Officers

Monroe, Whitaker, Bell, Williams, Sedlak, and McCoy for violations of his constitutional

---

    [1]  This matter was referred to the undersigned for Report and Recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

rights under the First and Eighth Amendments.  See Dkt. No. 1 ("Compl.").

Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 26. Rodriguez opposed Defendants' motion (Dkt. Nos. 37 and 39), and Defendants submitted a reply (Dkt. No. 40).  For the following reasons, it is recommended that Defendants' motion for summary judgment be granted in part and denied in part.

## I.  BACKGROUND[2]

### A.  Facts

The record herein contains few undisputed facts.  In support of the motion, Defendants filed a Statement of Material Facts.[3]  Dkt. No. 26-7.  Rodriguez responded to the Statement

---

[2] Unpublished decisions cited within this Report-Recommendation have been provided to plaintiff.

[3] At the time of Defendants' motion, N.D.N.Y. Local Rule 7.1(a)(3) provided:

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established.  The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.  It does not, however, include attorney's affidavits.  Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment.  See also L.R. 56.2.

The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.  The non-movant's response may also set forth a short and concise statement of any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established.

of Material Facts.[4]  Dkt. No. 37 at pp. 1-9; Dkt. No. 39 at pp. 1-10.  The facts recited are for the relevant time period as referenced in the Complaint and are related herein in the light most favorable to Rodriguez as the nonmoving party.  See subsection II(A) infra.

On or about April 25, 2018, Rodriguez was involved in a physical altercation with Christopher Bell, another inmate confined in Ulster County Jail.  Compl. at ¶ 6; see also Rodriguez v. Goins ("Rodriguez I"), No. 18-CV-1380, Dkt. No. 1 (N.D.N.Y. filed Nov. 29, 2018).  In November 2018, Rodriguez filed a lawsuit asserting constitutional claims related to the April 2018 incident.  See Rodriguez I, Dkt. No. 1.  In late November 2018, defendants Correctional Officers Sedlak ("Sedlak") and Whitaker ("Whitaker") moved Rodriguez to the Administrative Segregation Unit in B-Pod.[5]  Compl. at ¶ 17; Dkt. No. 26-4 at 30, 38, 61-62.[6]  Rodriguez was placed under Constant Supervision with a No-Contact Order against Inmate Bell.[7]  Dkt. No. 26-5 at ¶ 6; Dkt. No. 26-6 at ¶ 5; Dkt. No. 37 at 2, ¶ 2.  Inmate Bell was also

---

Effective January 1, 2021, the rule number was changed to Local Rule 56.1.

[4]  In his response, Plaintiff objects to Defendants' citations to his deposition which, he alleges, "has errors that the plaintiff has requested to be changed but has not" and "has not been stipulated to[.]" Dkt. No. 37 at p. 3, ¶ 7.  Because Plaintiff admits that he received a copy of his deposition transcript and has not proffered evidence that he made a request to execute the transcript or to make specific changes to the transcript, his objection lacks merit.  See Thomas v. S.E.A.L. Sec., Inc., 301 F. App'x 32, 33 (2d Cir. 2008) (summary order) (holding that the magistrate judge did not err in relying upon an unsigned deposition because "a deposition need only be signed where a party so requests.") (citing FED. R. CIV. P. 30(e)); see also Vlad-Berindan v. NYC Metro. Transportation Auth., No. 14-CV-10304, 2017 WL 9538168, at *26 (S.D.N.Y. Aug. 25, 2017), report and recommendation adopted, 2017 WL 4180022 (S.D.N.Y. Sept. 21, 2017), aff'd, 779 F. App'x 774 (2d Cir. 2019).

[5]  Inmates in Administrative Segregation units are kept separate from other inmates due to safety and security concerns.  Dkt. No. 26-5 at ¶ 8; Dkt. No. 26-6 at ¶ 7; Dkt. No. 37 at 2, ¶ 3.

[6]  Unless otherwise indicated, page citations refer to the pagination auto-generated by this Court's electronic filing system, ECF, located at the header of each page, not the pagination of the individual documents.

[7]  Inmates who are placed under Constant Supervision have a corrections officer stationed outside of their cell at all times.  Dkt. No. 26-5 at ¶ 8; Dkt. No. 26-6 at ¶ 7; Dkt. No. 37 at 2, ¶ 3.

housed in the Administrative Segregation Unit in B-Pod under Constant Supervision with a No-Contact Order against Rodriguez.  Dkt. No. 26-5 at ¶ 7; Dkt. No. 26-6 at ¶ 6; Dkt. No. 37 at 2, ¶ 2.  Rodriguez and Bell were on Ulster C.J.'s "No-Contact List" as a result of the April 2018 altercation.[8]  Dkt. No. 26-5 at ¶ 9; Dkt. No. 26-6 at ¶ 9; Dkt. No. 37 at 2 ¶ 4.  Inmate Bell's cell was located on one side of B-Pod and Rodriguez's cell was located on the opposite side.  Dkt. No. 26-5 at ¶ 7; Dkt. No. 26-6 at ¶ 6; Dkt. No. 37 at 2 ¶ 2.

On December 4, 2018, defendant Correctional Officer Monroe ("Monroe") was working as the Housing Unit Officer in B-Pod.  Dkt. No. 26-5 at ¶ 3.  Defendants Correctional Officers Bell ("C.O. Bell") and Williams ("Williams") were also working in B-Pod.  Dkt. No. 26-4 at 44; Dkt. No. 26-6 at ¶¶ 3, 8.  C.O. Bell was assigned to Rodriguez's cell and Williams was assigned to Inmate Bell's cell.  Id.

On December 4, 2018, Monroe opened Rodriguez's cell door, releasing him from his cell to use the shower and telephone.  Dkt. No. 26-5 at ¶ 14; Dkt. No. 26-6 at ¶ 15; Dkt. No. 37 at 5 ¶ 13.  C.O. Bell remained at his post, but was able to see Rodriguez.  Dkt. No. 26-6 at ¶ 15.  At approximately 12:30 P.M., Monroe opened Inmate Bell's cell doors releasing him from his cell.  Dkt. No. 26-6 at ¶ 14; Dkt. No. 37 at p. 18.  At approximately 1:00 P.M., Rodriguez and Inmate Bell were involved in a physical altercation.  Dkt. No. 26-4 at 45; Dkt. No. 26-5 at ¶ 13; Dkt. No. 26-6 at ¶ 15; Dkt. No. 37 at 16-18.

Rodriguez testified that Inmate Bell "attacked" him and struck him in the ear, face, head, and back of his neck.  Dkt. No. 26-4 at 47.  Rodriguez was seated at the time and "did not fight back."  Id. at 53. Rodriguez testified that the assault continued for "less than

---

[8]  When inmates have had altercations or arguments, they are placed on a No-Contact List.  Dkt. No. 26-5 at ¶ 9; Dkt. No. 26-6 at ¶ 9; Dkt. No. 37 at p. 2, ¶ 4.

five minutes" and he does not recall if the officers intervened.  Id. at 54.  Rodriguez was

escorted to the medical unit.  Id.  Rodriguez spoke with defendant Correctional Officer

Tracy McCoy ("McCoy") and expressed his intent to file a grievance.  Dkt. No. 26-4 at 56.

McCoy advised Rodriguez that the issues were "non-grievable."  Id.

In an Incident Report, C.O. Bell reported that Inmate Bell approached Rodriguez while

he was talking on the telephone and started punching Rodriguez in the face.[9]  Dkt. No. 37

at 16.  Rodriguez tried to "get[ ] away" but "fell to the ground" and Inmate Bell "continued

punching Rodriguez in the back of his head."  Id.

## B.  Procedural History

In October 2019, Rodriguez commenced this action.  See Compl.  Upon review of the

Complaint, the Court found that the following claims survived and required a response:

(1) Eighth Amendment failure to protect claims against Monroe, C.O. Bell, Williams, Sedlak,

and Whitaker; and (2) First Amendment retaliation claims against Bell, Sedlak, and McCoy.

See Dkt. No. 4 (the "November Order").  Defendants filed an Answer to the Complaint.  Dkt.

No. 14.[10]  On January 8, 2020, a Mandatory Pretrial Discovery and Scheduling Order was

issued directing the parties to complete discovery on or before July 8, 2020, and file

dispositive motions on or before September 8, 2020.  Dkt. No. 16.  On September 18, 2020,

Defendants moved for an extension of time to conduct Plaintiff's deposition and an

---

[9]  Monroe, Bell, and Williams prepared Incident Reports related to the altercation.  Rodriguez provided the Incident Reports with his submission, without objection or challenges to the authenticity of the documents.  See Dkt. No. 40 at 10.  Therefore, the undersigned will consider the exhibits/documents in the context of the within motion.  See Daniel v. Unum Provident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party").

[10]  On January 9, 2020, Defendants filed an amended Answer.  Dkt. No. 19.

extension of the discovery and dispositive deadlines.  Dkt. No. 22.  Rodriguez opposed the request for an extension of time.  Dkt. No. 25.  On September 21, 2020, the Court issued an Order extending the deadline for conducting plaintiff's deposition until October 5, 2020, and the deadline for dispositive motions to December 7, 2020.  Dkt. No. 24.  On October 22, 2020, Plaintiff underwent his deposition.  Dkt. No. 26-4.  On December 7, 2020, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking summary judgment and dismissal of all claims.  See generally Dkt. No. 26.

## II.  DISCUSSION

Rodriguez contends that Defendants (1) were deliberately indifferent to his health and safety, and (2) retaliated against him in violation of his constitutional rights.  See generally Compl.  Defendants argue they are entitled to judgment as a matter of law on Rodriguez's Eighth Amendment and First Amendment retaliation claims.  Defendants also claim that Rodriguez failed to establish that Whitaker, Williams, Sedlak, and McCoy were personally involved in the alleged constitutional violations.  In the alternative, Defendants argue they are entitled to qualified immunity.  See generally Dkt. No. 26-8.

### A.  Legal Standards

#### 1.  Motion for Summary Judgment

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c);

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. See Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### 2. N.D.N.Y. Local Rule 56.1

As discussed supra, Defendants filed a Statement of Material Facts, and Rodriguez responded to the Statement of Facts denying certain statements. Defendants argue that because Plaintiff failed to include citations to the record or other evidence to substantiate his denials, the facts set forth in their Statement of Material Facts must be deemed admitted. Dkt. No. 40 at 4-6.

The undersigned is not required to "perform an independent review of the record to find proof of a factual dispute." Prestopnik v. Whelan, 253 F.Supp. 2d 369, 371 (N.D.N.Y. 2003). Although the Local Rules provide that the Court shall deem admitted any facts that the nonmoving party fails to "specifically controvert," and pro se plaintiffs are expected to abide by the Local Rules, pro se plaintiffs are also afforded special solicitude in this District and within the Second Circuit. See N.D.N.Y. L.R. 56.1(b); see also subsection II.A.1 supra. Accordingly, in deference to Plaintiff's pro se status, the Court will independently review the record when evaluating Defendants' motion for summary judgment. See Perry v. Ogdensburg Corr. Facility, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) (determining that, "although [p]laintiff failed to respond to the statement of material facts filed by [d]efendants as required under Local Rule 7.1(a)(3), the Court would invoke its discretion to review the entire record when evaluating the parties' respective Motions for summary judgment.").

## B. Prematurity of Summary Judgment Motion

Rodriguez urges the Court to deny Defendants' motion for summary judgment as premature due to outstanding discovery. See Dkt. No. 39 at 2-10, 14-15. Specifically, Rodriguez claims that Defendants failed to provide log books, computer log entries, the

name of the porter, or "camera footage" which would support his claims. Id. at 4, 5, 7, 10. In response, Defendants advise, "the entire Ulster County Jail file regarding plaintiff was previously provided[,]" with the exception of video surveillance materials, which Plaintiff never requested. See Dkt. No. 40 at 8-9.

"Under Rule 56(f), summary judgment 'may be inappropriate where the party opposing it shows . . . that he cannot at the time present facts essential to justify his opposition.'" Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (citing FED. R. CIV. P. 56(e) advisory committee's note to 1963 amendment). "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5, (1986)). Nevertheless, a "trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery." Id. (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290-99 (1968)).

> "To successfully assert a Rule 56(d) defense to a summary judgment motion, the non-movant should 'file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine [dispute] of material fact, (3) what effort the affiant has made to obtain those facts, and (4) why [those efforts were] unsuccessful[.]"

DeRosier v. Czarny, No. 5:18-CV-0919 (GLS/DEP), 2019 WL 4697504, at *5 (N.D.N.Y. May 24, 2019) (citations omitted), report and recommendation adopted, 2019 WL 4691251 (N.D.N.Y. Sept. 26, 2019). Pursuant to Rule 56(d), if a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

9

Although Rodriguez outlines the evidence he seeks and explains why it is relevant to his defense, he has not presented the Court with evidence demonstrating that he made efforts to obtain the evidence during the course of discovery.  In September 2020, Defendants filed a letter request with the Court seeking additional time to "conduct plaintiff's deposition" and "time to file a motion for summary judgment."  Dkt. No. 24.  In response, Rodriguez averred that he was "prepared for trial" and did not indicate or suggest to the Court that any discovery was outstanding or necessary.  Dkt. No. 25.  In October 2020, after his deposition was completed, Rodriguez did not serve any discovery demands or request an extension of time to conduct discovery.

Rodriguez does not explain why the evidence, which he asserts is imperative to his case, was not requested before Defendants filed their motion for summary judgment. Defendants point out that Rodriguez was aware that he could request the evidence, including video footage, having received video surveillance in connection with Rodriguez I. See Dkt. No. 40 at 9.   Based upon the procedural history of this matter, Rodriguez's request for the aforementioned discovery now, for the first time, is insufficient to meet his burden under Rule 56(d).  See Scott v. Koenigsmann, No. 9:12-CV-1551 (MAD), 2016 WL 1057051, at *9 (N.D.N.Y. Mar. 14, 2016) (finding that the plaintiff did not meet her burden under Rule 56(d) where the plaintiff made no attempt at discovery prior to the close of discovery or for the two-month period between her deposition and the filing of the dispositive motion, did not seek an extension of time to seek discovery, nor was there anything in the record to suggest that plaintiff "was somehow unaware of the identity of the witnesses she now seeks to depose."); see also Labombard v. Winterbottom, No. 8:14-CV-00071 (MAD), 2015 WL 6801206, at *6 (N.D.N.Y. Nov. 6, 2015) (rejecting the

plaintiff's request for additional discovery because he did not explain why he was unable to conduct any discovery or why he failed to seek additional time for discovery upon notice of the defendants' intention to move for summary judgment) (citation omitted).  For these reasons, the undersigned rejects Rodriguez's argument that summary judgment is premature due to outstanding discovery.[11]

### C.  Eighth Amendment

### 1.  Failure to Protect

"The Eighth Amendment requires prison officials to take 'reasonable measures to guarantee the safety of inmates' in their custody."  Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). "[A] state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983." Morales v. New York State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988).  To state a claim for failure to protect under the Eighth Amendment, a plaintiff must demonstrate that (1) he was "incarcerated under conditions posing a substantial risk of serious harm" (the objective prong); and (2) prison officials acted with deliberate indifference to that risk and the inmate's safety (the subjective prong).  Farmer, 511 U.S. at 834.

As to the objective prong, the deprivation must be "sufficiently serious," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)

---

[11]  Plaintiff also argues Defendants' motion was untimely.  Dkt. No. 37 at 1.  Pursuant to an Order filed on September 21, 2020, the deadline for dispositive motions was "the end of Monday, December 7, 2020."  Dkt. No. 24.  Although Plaintiff may have received the motion on December 9, 2020 (see Dkt. No. 37 at 1), Defendants' motion was timely filed with the Court on December 7, 2020.  Dkt. No. 26.  Thus, Plaintiff's argument that Defendants' motion is untimely is without merit.

(internal quotation marks omitted)), and "contemplate[ ] 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting)). "A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." Gilmore v. Rivera, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014).

Here, Defendants do not dispute that Rodriguez faced a substantial risk of serious harm from Inmate Bell. See Dkt. No. 26-8 at 8. Rather, Defendants challenge the subjective prong of Rodriguez's failure to protect claim, and argue that he cannot establish that Defendants acted with a "sufficiently culpable state of mind" or "deliberate indifference to his health and safety." Id.

As to the subjective prong, the plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety. See Farmer, 511 U.S. at 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The plaintiff must "show that the defendants actually inferred from that disclosure that a substantial risk of serious harm existed." Murray v. Goord, 668 F.Supp. 2d 344, 359 (N.D.N.Y. 2009). An officer's accidental failure to protect inmates from harm by other prisoners is not sufficient to state an Eighth Amendment violation. See Farmer, 511 U.S. at 840.

As an initial matter, Defendants contend that Rodriguez's Eighth Amendment claim must be dismissed because it was permissible for inmates with No-Contact Orders to be

12

placed in the same pod in Administrative Segregation and under Constant Supervision. Dkt. No. 26-5 at ¶ 10; Dkt. No. 26-6 at ¶ 10.  This argument is not only conclusory, but tangential.  Defendants have not offered evidence supporting the statement, such as the rules and regulations of Ulster C.J. or an affidavit from an administrator with personal knowledge of the Ulster C.J.'s procedures and policies.  Moreover, even if such a policy existed, Rodriguez alleges that Defendants acted with deliberate indifference to his health and safety because they were aware of the April 2018 altercation and No-Contact Orders and failed to keep Rodriguez and Inmate Bell apart.

To that end, Defendants argue that Monroe and C.O. Bell "had no knowledge whatsoever" that Rodriguez and Inmate Bell "previously fought" or that No-Contact Orders were in place.  See Dkt. No. 26-8 at 9.  As support, Defendants provided declarations from Monroe and C.O. Bell.  See Dkt. Nos. 26-5 and 26-6.  Monroe claims that, pursuant to Ulster C.J. policy, her supervisors (a classification sergeant or officer) would advise her of any No-Contact Orders.  Dkt. No. 26-5 at ¶ 17.  Monroe avers that her supervisors did not advise her that No-Contact Orders were in place for Rodriguez and Inmate Bell.  Id. Monroe and C.O. Bell contend that they never witnessed any fights or arguments between Rodriguez and Inmate Bell, and further, that Rodriguez never informed them of any prior fights or arguments.  Dkt. No. 26-5 at ¶ 12; Dkt. No. 26-6 at ¶ 13.  Monroe and C.O. Bell further attest that, on December 4, 2018, they were "not personally aware" of any No-Contact Orders between Rodriguez and Inmate Bell.  Dkt. No. 26-5 at ¶ 16; Dkt. No. 26-6 at ¶ 18.  With respect to the altercation, Monroe and C.O. Bell assert that the fight was "sudden and spontaneous" and lasted for "thirty seconds at most[.]" .  Dkt. No. 26-5 at ¶¶ 15, 18; Dkt. No. 26-6 at ¶¶ 17, 20.

In her declaration, Monroe claims she immediately called for a Rapid Response Team, "but the already-present corrections officers broke the fight up before they arrived." Dkt. No. 26-5 at ¶ 19. C.O. Bell attests that, "Officer Williams and I were able to break up the fight prior to the arrival of the Rapid Response Team." Dkt. No. 26-6 at ¶ 16. Williams did not provide an affidavit or declaration in support of the motion.

Initially, the Court addresses Rodriguez's argument that Defendants' affidavits should be discredited because their statements related to how the fight ended are contradicted by the statements in the Incident Reports. See Dkt. No. 37 at 5; Dkt. No. 39 at 14. The Court notes that, although inconsistencies between "contemporaneously-prepared incident report[s]" and an affidavit prepared for a dispositive motion generally involve a question of credibility for a factfinder to resolve, to defeat summary judgment, the inconsistencies must concern issues of material fact. See Outlaw v. Newkirk, 259 F.3d 833, 838 (7th Cir. 2001). Here, the record before the Court does not support a cause of action for failure to intervene. Rodriguez did not assert a failure to intervene claim in the Complaint, and, upon review of the Complaint pursuant to Section 1915, the Court did not discern a viable cause of action for failure to intervene and did not direct any defendant to respond as such. See Compl. at p. 9; see generally Dkt. No. 4. Moreover, Plaintiff testified as follows:

> Q. So, the fight occurred for a few minutes; correct?
> A. Yeah.
> Q. Would you say more or less than five minutes?
> A. I'd say less.
> Q. How did the fight come to an end?
> A. Aaah. I - - I think - - I don't know if they broke it up or not, but I - - I just remember a CO picking me up and they brought me to Medical.

Dkt. No. 26-4 at 54. Accordingly, the discrepancies that Rodriguez cites are not material to

14

the issue of whether Defendants acted with deliberate indifference in failing to protect Rodriguez from harm, and the undersigned finds that there is no failure to intervene claim properly before the Court.

In support of the failure to protect claim, Rodriguez claims that C.O. Bell, Monroe, and Williams were aware of his history with Inmate Bell, the prior altercation, and the No-Contact Orders and disregarded an excessive risk of harm to his health and safety. Rodriguez testified that, two weeks after the April 2018 incident, Williams, whom Rodriguez identifies as the "Intelligence Officer, "pulled me out to speak to him" about the altercation with Inmate Bell.[12] Dkt. No. 26-4 at 65-66. Rodriguez testified that, as early as the week before the December 2018 incident, and on the day of the incident, he told C.O. Bell that he was "concerned" about being housed in the same pod with Inmate Bell. Id. at 38-41.

According to Rodriguez, "about an hour or two" before Monroe opened his cell, Inmate Bell communicated verbal threats of physical violence to Rodriguez through a porter. Dkt. No. 26-4 at 48-49. Rodriguez testified that C.O. Bell overheard "the messages," "got up and used the phone," and summoned the Corrections Emergency Response Team ("CERT") team. Id. at 70-73. When the team arrived, they spoke to C.O. Bell and to Rodriguez. Id. at 71. Rodriguez told the team members, "if we both come out -- this guy is threatening me. If we come out, we're going to fight." Id. Rodriguez stated, I don't know why they put me on the same pod as [Inmate] Bell. I said, me and [Inmate Bell] got a lot of issues. So he's sending all these threats over here." Id. at 73. Rodriguez watched the

---

[12] In opposition to the motion for summary judgment, Rodriguez asserts that Williams "was the responding officer to the first assault[.]" See Dkt. No. 39 at 15. This statement is not supported by the record before the Court or Plaintiff's deposition testimony in Rodriguez I. Rodriguez I, Dkt. No. 23-3.

team members talk to Williams and Inmate Bell and then to Monroe.  Dkt. No. 26-4 at 72.
The team members continued "going back and forth" talking to C.O. Bell, Williams, and
Monroe.  Id. at 70-72.  The conversations lasted for "a few minutes."  Id. at 72.  A team
member told Rodriguez, "we're good, we're in Ad Seg," and stated, "there is no way for him
to get to [you]."  Id. at 74.

The competing evidence rests on the credibility of Rodriguez on the one hand and
Monroe and C.O. Bell on the other.  The Court notes that Rodriguez's account of the CERT
team's response was provided during Rodriguez's deposition in October 2020.  Notably, the
affidavits from C.O. Bell and Monroe, which were executed two months later, lack any
statements confirming or denying Rodriguez's account.  See generally Dkt. Nos. 26-5, 26-6.
In these circumstances, the governing law that the evidence must be viewed in the light
most favorable to the non-moving party directs the Court to credit Rodriguez's version of
events for purposes of this motion.  See In re Dana Corp., 574 F.3d 129, 152 (2d. Cir.
2009) (holding that a court faced with a motion for summary judgment must draw all
reasonable inferences in favor of the non-moving party and may not make credibility
determinations or weigh the evidence, functions which are reserved to a jury and not a
judge) (citing cases).

Having thoroughly reviewed the deposition transcript and record, the Court finds that
there are issues of fact related to Monroe's, C.O. Bell's, and Williams' actions and whether
Defendants acted with the necessary state of mind and "deliberately disregarded"
Rodriguez's safety in failing to protect him from the assault by Inmate Bell.  Thus, it is
recommended that Defendants' motion for summary judgment be denied on this ground.

## 2. Personal Involvement[13]

Defendants argue that Williams, Whitaker, and Sedlak were not personally involved in the alleged Eighth Amendment violations.  Dkt. No. 26-8 at 18.  "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  See Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981); Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Wright, 21 F.3d at 501.  In other words, supervisory officials may not be held liable merely because they held a position of authority.  See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Before Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  Colon v. Coughlin,

---

[13]  Plaintiff did not respond to Defendants' personal involvement argument.  See generally Dkt. Nos. 37 and 39.  However, because Plaintiff executed his Complaint, "under the penalty of perjury[,]" the undersigned will accept the Complaint as an affidavit to the extent that the statements are based on Plaintiff's personal knowledge or are supported by the record.  See Berry v. Marchinkowski, 137 F.Supp. 3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider an unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude).

58 F.3d 865, 873 (2d Cir. 1995), abrogated by Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing supervisory liability.  Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability" and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'"  Id. at 618.  Therefore, to avoid summary judgment, the plaintiff had to establish that the defendant violated the Eighth Amendment by his or her "own conduct, not by reason of [his or her] supervision of others who committed the violation" and could not "rely on a separate test of liability specific to supervisors."  Id. at 619 (citations omitted).

Whitaker and Sedlak were not present during the altercation between Rodriguez and Inmate Bell.  Dkt. No. 26-4 at 44.  Rodriguez identified Whitaker as the officer "in charge of classification" who "oversees . . . where inmate[s] are housed" and testified that Whitaker was responsible for the decision to move him to the B-Pod.  Compl. at ¶ 14; Dkt. No. 26-4 at 61.  Rodriguez also claims that Sedlak, "a senior officer and corporal," informed him that he was being moved to B-Pod and Administrative Segregation.  Compl. at ¶ 17.  As Rodriguez was packing his property, he remembered that Inmate Bell was in B-Pod and told Sedlak, "if I go down to the same unit as inmate Bell, most likely I'll end up hurt."  Id.  Sedlak allegedly responded, "what did you think was going to happen after suing the [expletive] supervisors?"  Id.  Rodriguez reiterated that he "did not feel safe."  Id.

Rodriguez asserts that Williams was stationed outside of Inmate Bell's cell and present

18

during the December 2018 altercation.  Compl. at ¶ 16.  Moreover, as discussed in Part II(C)(1) supra, Rodriguez testified that Williams interviewed Rodriguez about the April 2018 incident.  Dkt. No. 26-4 at 65-66.  Rodriguez also asserts that Williams discussed Inmate Bell's threats with the CERT team prior to the altercation.  Id. at 71.

Rodriguez's allegations regarding Whitaker's supervisory role, his summary of conversations with Sedlak, and his testimony regarding Williams' knowledge of his history with Inmate Bell are uncontested.  Williams, Whitaker, and Sedlak did not provide affidavits in support of the motion for summary judgment.  Thus, "under Rule 56, defendants have failed to carry their burden of presenting affidavits or other evidence to support their claim that no material issues of fact exist as to the personal involvement." Davis v. Goode, 995 F.Supp. 82, 91 (E.D.N.Y. 1998); see also Guarneri v. Hazzard, No. 9:06-CV-985 (NAM/DRH), 2010 WL 1064330, at *24 (N.D.N.Y. Mar. 22, 2010) (denying the defendants' motion for summary judgment with regard to personal involvement where the defendant failed to submit an affidavit); see also Ramos v. O'Connell, 28 F.Supp. 2d 796, 803 (W.D.N.Y. 1998) (denying summary judgment where the defendants failed to submit affidavits or documents to contradict the plaintiff's account). Therefore, affording Plaintiff special solicitude, it is recommended that Defendants' motion for summary judgment and dismissal of the claims against Whitaker, Williams, and Sedlak, on this ground be denied.

### D.  Retaliation Claims

Rodriguez claims that C.O. Bell, Sedlak, and McCoy retaliated against him for filing Rodriguez I.  See generally Compl.  To establish a First Amendment retaliation claim under Section 1983, a prisoner must show the following: that "(1) . . . the speech or conduct at issue was protected, (2) . . . the defendant took adverse action against the plaintiff, and

(3) . . . there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citations omitted).  "[P]risoner retaliation claims are easily fabricated, and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks and citations omitted).  Accordingly, the Second Circuit requires courts to "examine prisoners' claims of retaliation with skepticism and particular care." Colon, 58 F.3d at 872.

It is well settled that the filing of administrative grievances and lawsuits constitutes protected speech.  See Williams v. Ingraham, No. 04-CV-257 (GLS/DRH), 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue—complaints to judicial officials, filing a lawsuit, and grievances—are clearly constitutionally protected rights.") (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002), abrogated on other grounds by Fabricio v. Annucci, 790 F. App'x 308 (2d Cir. 2019)).  In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).

As to the third element, causal connection, the plaintiff bears the burden of establishing a causal connection "sufficient to support the inference 'that the speech played a substantial part' in the [ ] adverse [ ] action." Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quoting Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 780-81 (2d Cir. 1991)).   A plaintiff may establish a causal connection "with circumstantial evidence if it is 'sufficiently compelling[.]'" Kotler v. Donelli, 382 F. App'x 56, 57-58 (2d Cir. 2010) (summary order) (quoting Bennett, 343 F.3d at 137).

20

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.

Baskerville v. Blot, 224 F.Supp.2d 723, 732 (S.D.N.Y. 2002).

Here, Defendants concede that Rodriguez engaged in protected activity.  Dkt. No. 26-8 at 13.  Defendants argue however, that Rodriguez failed to establish that he suffered an adverse action causally related to the protected conduct.  In the alternative, Defendants argue that Sedlak and McCoy were not personally involved in the retaliation claims.  See id. at 16.

### 1.  Adverse Action

Defendants argue that Inmate Bell's assault was not an adverse action by C.O. Bell, Sedlak, and McCoy defendants because "the defendants had no involvement whatsoever in causing them to fight."  See Dkt. No. 26-8 at 13.  For the reasons set forth in Part II(C) supra, this argument lacks force because the record before the Court contains genuine issues of material fact with regard to whether C.O. Bell and Sedlak failed to protect Rodriguez from harm.

Even assuming the altercation between Inmate Bell and Rodriguez – more specifically the failure to protect Rodriguez from this altercation – is not an adverse action, Defendants fail to address Rodriguez's claim that the decision to transfer him to B-Pod with Inmate Bell was an adverse action.  In his complaint, plaintiff alleges that defendants moved him to B-Pod in retaliation for filing Rodriguez I.  See Compl. ¶¶ 14, 17.  During his deposition, Rodriguez testified:

> they moved me to the same Pod as Bell after the first incident
> happened.  And right - - this was like right after they got the
> paperwork . . .  for the lawsuit.  They packed me up and
> moved me downstairs with him.  On the way down there, I'm
> telling them that Inmate Bell is in the same Pod.

Dkt. No. 26-4 at 77.  Rodriguez concluded, "[i]t sounds like retaliation to me."  Id.

When assessing whether an inmate suffered an adverse action, "the Second Circuit
has explained that fear is a key aspect[.]"  Cruz v. Lee, No. 14-CV-4870, 2016 WL
1060330, at *6 (S.D.N.Y. Mar. 15, 2016) (holding that the denial of protective custody
constitutes an adverse action because the plaintiff feared for his safety) (citation omitted).
The Second Circuit has held, "exposing a prisoner to potential assault by another inmate
can constitute an adverse action, even if the actual resulting assault turns out to be
relatively minor."  Brandon v. Kinter, 938 F.3d 21, 43 (2d Cir. 2019); see also Pusepa v.
Annucci, No. 17-CV-1765, 2019 WL 690678, at *15 (S.D.N.Y. Feb. 19, 2019) ("[A]
correction officer who orchestrates rather than directly commits a violent act against an
inmate may commit an adverse action for retaliation purposes.") (citing Dawes v. Walker,
239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds Swierkiewicz v. Sorema N.A.,
534 U.S. 506 (2002)); see also Johnson v. Connolly, No. 907-CV-1237 (TJM/DEP), 2010
WL 2628720, at *6 (N.D.N.Y. Mar. 15, 2010) (holding that the plaintiff's allegation that he
was exposed to enemy inmates, even though he was placed in disciplinary SHU
confinement, could be found to be an adverse action) report and recommendation adopted,
2010 WL 2628747 (N.D.N.Y. June 25, 2010); see also Walker v. LaValley, No. 12-CV-807
(TJM), 2014 WL 4744735, at *14 (N.D.N.Y. Sept. 23, 2014) (holding that a reasonable
factfinder could conclude that an inmate's placement in a company with excessive noise,
resulting in sleep deprivation, could constitute an adverse action because it "would deter a

22

similarly situated individual of ordinary firmness from exercising his constitutional rights.")

Accordingly, the undersigned concludes that a reasonable factfinder could find that the decision to house Rodriguez in the same pod as Inmate Bell was an adverse action sufficient to support a retaliation cause of action.

### 2. Causal Connection

As discussed supra, Rodriguez engaged in protected conduct when he filed the complaint in Rodriguez I in November 2018.  It is well settled that retaliation is not "reasonably inferred" where a plaintiff's protected speech does not involve the defendant alleged to have retaliated against him.  See Olutosin v. Lee, No. 14-CV-00685, 2018 WL 4954107, at *11 (S.D.N.Y. Oct. 12, 2018) (citing Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009)); see also Hare v. Hayden, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.")).  The original complaint in Rodriguez I identified as defendants Sheriff Paul J. VanBlarcum, Undersheriff Michael O. Freer, Captain Vincent V. Altieri, and Superintendent James R. Hanstein.  See Rodriguez I, Dkt. No. 1.  The Court dismissed the claims in the original complaint, without prejudice, for failure to state a claim upon which relief could be granted.  Dkt. No. 4.  In January 2019, nearly two months after the December 2018 altercation with Inmate Bell, Rodriguez filed an amended complaint adding Officer Goins as a defendant. See Rodriguez I, Dkt. No. 7.  On February 27, 2019, a summons was issued to Goins.  See Rodriguez I, Dkt. No. 9.

The defendants in this action were not named as defendants in the original complaint nor amended complaint in Rodriguez I.  Indeed, Rodriguez did not amend his pleading to include Goins as a defendant and the amended complaint in Rodriguez I was not served

upon Goins until March 2019, three months after the December 2018 altercation. Therefore, to establish a retaliation claim against C.O. Bell, Sedlak, and McCoy, Rodriguez must "show that he could adduce sufficient evidence at trial to allow a jury to find that defendants were motivated by a desire to retaliate against him." Pelletier v. Armstrong, No. 3:99-CV-1559, 2007 WL 685181, at *14 (D. Conn. Mar. 2, 2007) (dismissing retaliation claim based upon the plaintiff's claim that the defendant's actions were motivated by a lawsuit that was not served until one month after alleged retaliatory transfer).

Rodriguez admits that he did not see Defendants speak with Goins, see Dkt. No. 26-4 at 63, but grounds his retaliation claims in statements he attributes to Sedlak, C.O. Bell, and McCoy. Specifically, Rodriguez alleges that Sedlak referred to his "little stunt serving lawsuit papers" when Sedlak told Rodriguez in November 2018 that he was being relocated to B-Pod. Rodriguez claims that Sedlak stated that Rodriguez, "pissed a lot of people off" and asked him, "what did you think was going to happen after suing the fucking supervisors?" Compl. at ¶ 17. Rodriguez also asserts that, on December 4, 2018, he told C.O. Bell that he believed he was "being set up for filing the lawsuit," and C.O. Bell responded, "that's above me." Id. at ¶ 15. Rodriguez also testified that, upon overhearing Inmate Bell's threats through the porter, C.O. Bell "said something about the lawsuit, you shouldn't have done that, that was stupid or you shouldn't have dropped it something like that, you shouldn't have dropped the lawsuit on him or he said something like that." Dkt. No. 26-4 at 51. In his declaration, C.O. Bell claims he had no knowledge of Rodriguez I and denied making the statements that Rodriguez attributes to him. Dkt. No. 26-6 at ¶¶ 11-12. Sedlak and McCoy did not provide affidavits.

Viewing the facts in the light most favorable to Rodriguez, a reasonable fact-finder

could conclude that Sedlak's and C.O. Bell's alleged statements demonstrate a causal

connection between Rodriguez I and the adverse action. Therefore, because a genuine

issue of material fact exists regarding retaliatory intent, it is recommended that Defendants'

motion for summary judgment be denied as to Plaintiff's First Amendment retaliation claims

against Sedlak and C.O. Bell.  See Rivera v. Lawrence, No. 9:05-CV-0967 (TJM/GHL),

2009 WL 1734735, at *5 (N.D.N.Y. June 18, 2009) (finding, on a motion for summary

judgment, that it was "reasonable to infer from Defendant's alleged statements that he may

have acted with a retaliatory motive.") (citation omitted); see also Colon, 58 F.3d at 873

(". . . disparity between the affidavits of [a prisoner] and [corrections officer] itself creates a

credibility issue that is not readily amenable to resolution on summary judgment.") (citation

omitted).

    A different conclusion is reached, however, with respect to the retaliation claim against

McCoy.  Rodriguez claims that McCoy, a grievance officer, investigated a grievance related

to the first altercation in April 2018.  Compl. at ¶ 18; Dkt. No. 26-4 at 68-69.  The record

lacks any evidence related to that grievance, including when it was filed or the substance of

that grievance.  Although Rodriguez alleges that McCoy was aware of his prior altercation

with Inmate Bell, Rodriguez does not allege, nor does the record support the conclusion,

that McCoy was aware of his prior lawsuit, that she maintained a supervisory role at Ulster

C.J., that she was present when he was assaulted by Inmate Bell, or that she was involved

with the decision to transfer Rodriguez to B-Pod.  In the Complaint, Rodriguez alleged that

he spoke with McCoy in the medical unit on December 4, 2018, and that McCoy stated,

"this will continue to happen unless I drop it."  Compl. at ¶ 18.  During the deposition

however, Rodriguez testified that this conversation consisted of McCoy advising him that his

25

complaints related to the incident were "non-grievable."  Dkt. No. 26-4 at 79.  Rodriguez's

vague, conclusory, and contradictory allegations are insufficient to establish McCoy's

personal involvement.  See Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993).

Accordingly, it is recommended that Defendants' motion for summary judgment and

dismissal of Rodriguez's retaliation claims against McCoy on this ground be granted.

### F. Qualified Immunity

Qualified immunity shields public officials from being sued for conduct undertaken in the

course of their duties so long as that conduct "does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v.

Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges

"are so clearly defined that a reasonable public official would know that his actions might

violate those rights, qualified . . . immunity might still be available . . . if it was objectively

reasonable for the public official to believe that his acts did not violate those rights."

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d

364, 367 (2d Cir. 1990) (internal citations omitted).

> At the summary judgment stage, claims of qualified immunity are evaluated
> "using a two-part inquiry: (1) 'whether the facts, taken in the light most
> favorable to the party asserting the injury show that the officer's conduct
> violated a federal right' and (2) 'whether the right in question was clearly
> established at the time of the violation.'"  Sloley v. Vanbramer, 945 F.3d 30,
> 36 (2d Cir. 2019) (quoting Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (per
> curiam)). The Court has discretion to decide which of the two prongs to
> address first. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).
> Under either prong of the qualified immunity analysis, the Court "may not
> resolve genuine disputes of fact in favor of the party seeking summary
> judgment." Tolan, 572 U.S. at 656, 134 S.Ct. 1861. Qualified immunity "is an
> affirmative defense on which [Defendants have] the burden of proof." Outlaw
> v. City of Hartford, 884 F.3d 351, 367 (2d Cir. 2018).

Comerford v. Vill. of N. Syracuse, No. 518CV01143BKSTWD, 2021 WL 950974, at *34 (N.D.N.Y. Mar. 12, 2021).

Here, Defendants' argument in support of the qualified immunity defense is one paragraph long, conclusory, and unsupported by facts.  See Dkt. No. 26-8 at 19.  On December 4, 2018, it was "clearly established that inmates have the right to be free from harm inflicted by fellow prisoners and that corrections officers have an obligation to protect inmates from a known and substantial risk of serious harm."  Dublin v. New York City Law Dep't, No. 10 CIV. 2971, 2012 WL 4471306, at *7 (S.D.N.Y. Sept. 26, 2012).  Moreover, the "general right to be free from retaliation" is also clearly established.  Gilmore v. Blair, 9:18-CV-463 (GLS/DJS), 2020 WL 579467, at *8 (N.D.N.Y. June 30, 2021).  Because a reasonable jury could conceivably accept Rodriguez's claim that Defendants' conduct was objectively unreasonable, and Defendants have failed to meet their burden of proof demonstrating otherwise, Defendants are not entitled to qualified immunity for the alleged constitutional violations.  Accordingly, it is recommended that Defendants' motion be denied on this ground.  See, e.g., Thomas v. Delaney, 9:17-CV-1023 (GLS/CFH), 2019 WL 4247807, at *19 (N.D.N.Y. Aug. 13, 2019) (denying summary judgment on qualified immunity, noting "[w]hile Defendants summarize general caselaw, the argument in support of the qualified immunity defense is one paragraph long, entirely conclusory, and unsupported by any facts.  Indeed, Defendants do not specify for which constitutional claim they are entitled to qualified immunity.") (citing Roberts v. Hobbs, No. 5:10-CV-00174, 2010 WL 5888777, at *6 (E.D. Ark. Nov. 8, 2010)).

### III.  CONCLUSION

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment (Dkt. No. 26) be **GRANTED** as to Plaintiff's claims against McCoy and **DENIED** in all other respects; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[14]

**IT IS SO ORDERED.**

Dated: July 2, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[14] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).